UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　　　　　　　　　　　　　)<br>　　　　Plaintiff,　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　v.　　　　　　　　　　　　　)　　Crim. No. 05-361(RBW)<br>　　　　　　　　　　　　　　　　)<br>GLENN BULLOCK,　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Defendant.　　　　　　　　)　| |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS
AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF**

Defendant Glenn Bullock, through counsel, respectfully moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, and the Fourth and Fifth Amendments to the United States Constitution, to suppress all tangible evidence and statements obtained in this case. Mr. Bullock respectfully requests a hearing on this matter.

**Factual Background[1]**

On September 27, 2005, Glenn Bullock was indicted with possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A)(iii). These charges stem from the warrantless arrest and search of Mr. Bullock.

On August 26, 2005, officers of the District of Columbia Metropolitan Police Department (MPD) stopped a car Glenn Bullock was driving near the 2800 block of Alabama Avenue, SE based on alleged traffic violations. A female was seated in the front passenger seat. After Mr. Bullock complied with officer commands to stop the vehicle, they approached him. Mr. Bullock

---

[1] This statement of the facts is a summary based on the P.D. 163 police report provided as discovery in this case. By including in this motion the facts as alleged by government witnesses, Mr. Bullock does not in any way concede that these facts are accurate or true.

provided a valid license. He could not locate the registration. Officers asked Mr. Bullock to exit the vehicle and he complied. An officer patted Mr. Bullock down. The officer felt an object in Mr. Bullock's leg and asked him what is was. Mr. Bullock replied that it was a money clip. An officer reached inside of Mr. Bullock's pants and retrieved a cloth bag, a small scale, baggies, and a plastic bag containing a piece of alleged crack cocaine. When confronted with the items from inside his pants, Mr. Bullock then made incriminating statements to the officers. Mr. Bullock was transported to the Sixth District where he was interrogated. He subsequently gave a videotaped statement indicating that he possessed the crack cocaine for both personal use and for distribution.

      Officers had no warrant and no probable cause to search Mr. Bullock or the vehicle he drove. Officers likewise had no probable cause to arrest and interrogate Mr. Bullock. Because there was no lawful authority to search and arrest Mr. Bullock, the evidence seized and the statements obtained from Mr. Bullock were the fruit of improper police conduct and should be suppressed. Moreover, the statements in this case were obtained in violation of Mr. Bullock's constitutional rights. Mr. Bullock did not make an intelligent, knowing, and voluntary waiver of his rights under the Fifth and Sixth Amendments at the time he was interrogated by police.

## MEMORANDUM OF LAW

I.    **ALL TANGIBLE EVIDENCE AND STATEMENTS MUST BE SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF MR. BULLOCK'S FOURTH AMENDMENT RIGHTS AFTER AN UNLAWFUL SEARCH AND SEIZURE BY THE POLICE**

      The Fourth Amendment of the United States Constitution guarantees the right of people to be secure in their persons and protects them against unreasonable searches and seizures by the

police. U.S. CONST. Amend IV.  The government bears the burden of adducing sworn testimony sufficient to satisfy this Court that the facts and circumstances known to the officers both at the time they stopped the vehicle, ordered Mr. Bullock out, and subsequently seized and searched Mr. Bullock, justified each of those intrusions.  United States v. Jenkins, 530 F. Supp. 8, 10 (D.D.C. 1981) (citing Brinegar v. United States, 338 U.S. 160, 175 (1949).

In this case, evidence adduced at an evidentiary hearing will establish that Mr. Bullock's stop and seizure were unlawful and that there was no probable cause to search Mr. Bullock, and that any derivative evidence discovered therefrom must be suppressed.  See Taylor v. Alabama, 457 U.S. 687 (1982); Wong Sun v. United States, 371 U.S. 471 (1963).

Officers are not authorized to conduct an "on-the-street warrantless search of a person's effects based upon a police officer's suspicion or hunch." United States v. Boswell, 347 A.2d 270, 276 (D.C. 1975).  Rather, when a person is seized or searched without a warrant, the government bears the burden of proving the propriety of such action if any evidence from the seizure is to be used at trial.  See Malcolm v. United States, 332 A.2d 917, 918 (D.C. 1975). Unless the government can show that the tangible evidence and statements in the immediate case were obtained pursuant to a valid exception to the Fourth Amendment's warrant requirement, all such evidence must be excluded at trial.  See Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971).  The government will not be able to meet this heavy burden because, in this case, no valid exception applies.

In this case, the police acted without the authority of a warrant.  The officers' basis for stopping the vehicle driven by Mr. Bullock was an alleged traffic violation.  After officers stopped Mr. Bullock, they ordered him from the car.  As an initial matter, the government must

justify the need for Mr. Bullock, who was at all times cooperative, to exit the vehicle. See Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) (specifically noting, "we do not hold today that 'whenever an officers has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car"). Additionally, in the absence of reasonable articulable suspicion of criminal activity, officers had no valid justification for conducting a Terry frisk of Mr. Bullock once he was outside the vehicle. See Terry v. Ohio, 392 U.S. 1 (1968) (holding that Fourth Amendment is implicated even where police conduct stops short of "technical" arrest" or "full-blown search" and that reasonable suspicion is necessary for even limited detention). Lastly, once officers conducted frisk of Mr. Bullock, they were not permitted to then reach inside his clothing to seize items they could not immediately identify. See Minnesota v. Dickerson, 508 U.S. 366, 377 (1993) (holding that officers may only seize evidence detected by a sense of touch during a protective pat-down search where officer is acting within the bounds of Terry).

In the immediate case, the officers' conduct was more intrusive than necessary to effectuate an investigative detention otherwise authorized by the Terry and its progeny. The search of Mr. Bullock and seizure of evidence from him were committed in violation of the Fourth Amendment. When evidence is obtained because of a warrantless and unlawful seizure and/or an unlawful search, it is considered the "fruit of a poisonous tree" and must be excluded at trial. See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

**II.    ALL STATEMENTS MUST BE SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

Police may not question a person who is in their custody without first warning him that he has a right to remain silent, that anything he says may be used against him, that he is entitled to

consult with an attorney and to have the attorney present during the interrogation, and that if he cannot afford to hire an attorney, one will be appointed for him. Miranda v. Arizona, 384 U.S. 436, 444 (1966). In creating this list of warnings, the Supreme Court was not just making suggestions to police officers, but instead was creating "concrete constitutional guidelines for law enforcement agencies and courts to follow." Id. at 441-42; see also Dickerson v. United States, 120 S.Ct. 2326 (2000) (holding that principles of Miranda are constitutionally mandated). "[A]ny questioning initiated by law enforcement officers after a person has been taken into custody or otherwise of his freedom of action in some significant way" must be preceded by Miranda warnings. Miranda, supra, 384 U.S. at 444. Moreover, any police action is deemed interrogation for Miranda purposes so long as it is reasonably likely to elicit an incriminating response from the person in custody. See Rhode Island v. Innis, 446 U.S. 291 (1980). Here, the evidence will show that police engaged in conduct likely to illicit an incriminating response from Mr. Bullock when they showed him the drugs they had recovered from him and again when he was questioned at the police district.

  Even if the government is able to show that the defendant was read his Miranda rights prior to interrogation, the government still has the heavy burden of showing that the defendant intelligently, knowingly and voluntarily waived his right to remain silent and his right to have counsel present during questioning. See North Carolina v. Butler, 441 U.S. 369, 373 (1979). .

  Additionally, Mr. Bullock's statements cannot be used at trial unless the government can show that the statements were a product of his rational intellect and free will. Mincey v. Arizona, 437 U.S. 385, 398 (1978). The government bears the burden of proving the voluntariness of the statements by a preponderance of the evidence. See Lego v. Twomey, 404

U.S. 477, 489 (1972). To decide voluntariness, the Court must look at the totality of the circumstances to determine whether the defendant's free will had been overcome. Beasley v. United States, 512 A.2d 1007, 1016 (D.C. 1986).

In this case, the government will not be able to meet its burden because the circumstances in this case indicate that the Mr. Bullock's statements wer made involuntarily. Consequently, the statements should be suppressed for all purposes, including impeachment, and should be held inadmissible.

## CONCLUSION

Because the tangible evidence and statements were obtained as the result of an unlawful seizure and search in violation of the Fourth Amendment, and because the statements were obtained in violation of the Fifth and Sixth Amendments, all tangible evidence seized and statements obtained must be suppressed.

WHEREFORE, for the aforementioned reasons and for any other reasons which may appear to the Court at an evidentiary hearing on this Motion, Mr. Bullock respectfully requests that the Court grant this Motion.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

_____/S/_____
Tony Axam, Jr.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC 20004
(202) 208-7500