# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued November 13, 2007     Decided December 21, 2007

No. 06-3152

UNITED STATES OF AMERICA,
APPELLEE

v.

GLENN F. BULLOCK, JR.,
APPELLANT



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED DEC 2 1 2007

CLERK

---

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00361-01)

FILED FEB 1 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---

*Kenneth D. Auerbach*, appointed by the court, argued the cause and filed the brief for appellant.

*Sarah T. Chasson*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*.

2

Before: SENTELLE, RANDOLPH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This is a Fourth Amendment exclusionary rule case. Bullock was driving a car in Washington, D.C., and made an illegal turn. Metropolitan Police Department Officer Jackson stopped Bullock for the traffic violation. Bullock did not have registration; he also could not identify the car's owner, giving Officer Jackson just a first name for the alleged owner. Officer Jackson ordered Bullock out of the car in order to investigate further; frisked Bullock to ensure that he was not armed; felt a hard object that could have been a weapon hidden under Bullock's pants; searched Bullock's pants for the hard object; and discovered crack cocaine and a scale.

Bullock received three citations for traffic violations and was arrested and later indicted for illegal drug possession with intent to distribute. Bullock moved to suppress the drug evidence. The District Court denied the motion – ruling that the police's stop, order to get out of the car, frisk, and limited follow-up search were justified under the Fourth Amendment. Bullock pled guilty to the drug crime, reserving his right to appeal the Fourth Amendment issue. He was sentenced to 12 years and 7 months in prison and timely appealed.

In this Court, Bullock argues that the police violated the Fourth Amendment's proscription against "unreasonable searches and seizures" when they (i) ordered him out of the car and (ii) frisked him. We affirm because Bullock's arguments are flatly inconsistent with *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), and *Terry v. Ohio*, 392 U.S. 1 (1968).

Case 1:05-cr-00361-RBW    Document 31-2    Filed 02/13/2008    Page 4 of 15

3

I

First, we consider the propriety of Officer Jackson's order that Bullock get out of the car.

The Supreme Court and this Court have repeatedly emphasized that traffic stops are "especially hazardous." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). As then-Judge Roberts explained, "[a]pproaching a stopped car – particularly when there is reason to believe the driver or occupants may be armed – is one of the more perilous duties imposed on law enforcement officers." *United States v. Holmes*, 385 F.3d 786, 791 (D.C. Cir. 2004). Recognizing these dangers, the Supreme Court in *Pennsylvania v. Mimms* held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." 434 U.S. 106, 111 n.6 (1977). As the Supreme Court has reiterated, *Mimms* establishes a "bright line" rule. *Maryland v. Wilson*, 519 U.S. 408, 413 n.1 (1997).

Because the clarity and force of the bright-line rule set forth in *Mimms* are sometimes under-appreciated, if not ignored entirely, the decision warrants extensive quotation:

> We think it too plain for argument that the State's proferred justification – the safety of the officer – is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio, supra*, at 23. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a

Case 1:05-cr-00361-RBW    Document 31-2    Filed 02/13/2008    Page 6 of 15

4

suspect seated in an automobile." *Adams v. Williams*, 407 U.S. 143, 148 n. 3 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States v. Robinson*, 414 U.S. 218, 234 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." *Id.*, at 234 n. 5. . . .

Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as *de minimis*. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a "'petty indignity.'" *Terry v. Ohio*, supra, at 17. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

Contrary to the suggestion in the dissent of our Brother Stevens, *post*, at 122, we do not hold today that "whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car." *We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police*

Case 1:05-cr-00361-RBW    Document 31-2    Filed 02/13/2008    Page 8 of 15

5

> *officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.*

434 U.S. at 110-11 & n.6 (emphasis added and citation omitted).

The bright-line rule of *Mimms* means that "a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle." *Wilson*, 519 U.S. at 410. The Supreme Court later extended the bright-line rule to passengers, holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Id.* at 415. As the Supreme Court has explained, the risk of harm to the police when stopping a car "'is minimized if the officers routinely exercise unquestioned command of the situation.'" *Brendlin v. California*, 127 S. Ct. 2400, 2407 (2007) (quoting *Wilson*, 519 U.S. at 414); *see also Adams*, 407 U.S. at 146.

Here, Bullock was lawfully stopped for a suspected moving violation. Under *Mimms*, the police therefore could order him out of the car.

II

Second, we consider the propriety of Officer Jackson's frisk of Bullock.

A

It initially bears emphasis that, at the time of the frisk, Officer Jackson possessed reasonable suspicion not just of the traffic violations but also that Bullock had stolen the car (a crime often associated with a weapon) because Bullock could not produce registration and could not name the car's owner.

Case 1:05-cr-00361-RBW    Document 31-2    Filed 02/13/2008    Page 10 of 15

6

*See* Tr. of Suppression Hearing, Gov't Appendix 106 (District Court: "a reasonably prudent police officer would have suspicion that conceivably this car might be stolen"); *id.* at 90-91, 105; *see also United States v. Rowland*, 341 F.3d 774, 784 (8th Cir. 2003).

*Terry v. Ohio* authorizes a frisk during a stop when an officer "reasonably" would believe that the suspect "may be armed and presently dangerous." 392 U.S. 1, 30 (1968); *United States v. Holmes*, 385 F.3d 786, 790 (D.C. Cir. 2004). The purpose of the frisk is to ensure officer safety and the safety of others. *Terry*, 392 U.S. at 30; *Sibron v. New York*, 392 U.S. 40, 65 (protective frisk is designed to uncover "concealed objects which might be used as instruments of assault").

If an officer possesses reasonable suspicion that the detained suspect committed a violent or serious crime – such as murder, robbery, rape, burglary, assault with a weapon, or various drug offenses – the officer by definition is dealing with an individual reasonably suspected of committing a crime that involves or is associated with carrying or using a weapon. In such cases, it logically and necessarily follows that the officer may reasonably conclude the suspect "may be armed and presently dangerous." *Terry*, 392 U.S. at 30.

In *Terry* itself, therefore, the Court upheld the frisk because the suspects' actions were "consistent with [Officer] McFadden's hypothesis that these men were contemplating a daylight robbery – which, it is reasonable to assume, would be likely to involve the use of weapons." *Id.* at 28. When Officer McFadden stopped Terry, "he had no reason whatever to suppose that Terry might be armed, apart from the fact that he suspected him of planning a violent crime." *Id.* at 33 (Harlan, J., concurring). In other words, the frisk in *Terry*

7

was permissible because of the nature of the suspected crime – armed robbery. *See id.* at 33 (Harlan, J., concurring) ("Where such a stop is reasonable, however, the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence. . . . There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet."); *Adams v. Williams*, 407 U.S. 143, 146 (1972) ("The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect."); 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 9.6(a) p. 625 (4th ed. 2004) ("It is undoubtedly true, however, that in some cases the right to conduct a protective search must follow directly from the right to stop the suspect. . . . Lower courts have been inclined to view the right to frisk as being automatic whenever the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or for protection against the victim or others involved."); Wayne R. LaFave, *'Street Encounters' and the Constitution:* Terry, Sibron, Peters, *and Beyond*, 67 MICH. L. REV. 39, 88 (1968) ("[A] protective search may always be made when the stopping is to investigate what appears to be a crime of violence. For other crimes . . . it would apparently take noticeable bulges in the suspect's clothing, movements by the suspect toward his pockets, or similar observations to give rise to a substantial possibility that the suspect was armed.") (internal quotation marks and footnotes omitted).

Case 1:05-cr-00361-RBW   Document 31-2   Filed 02/13/2008   Page 13 of 15

8

Applying *Terry*, courts routinely hold that protective frisks to ensure officer safety are permissible when an officer has reasonable suspicion that the suspect committed a crime involving or associated with carrying or using a weapon. Such frisks are warranted because "some crimes by their very nature are so suggestive of the presence and use of weapons that a frisk is always reasonable when officers have reasonable suspicion that an individual might be involved in such a crime." *United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2007) (suspicion of burglary); *see also United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006) (suspicion of drug crimes; "an individual's involvement with drug transactions or distribution can support reasonable suspicion to frisk that individual for weapons"); *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) (suspicion of drug crimes; "[b]ecause weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction"); *United States v. Jacob*, 377 F.3d 573, 579 (6th Cir. 2004) (suspicion of drug crimes; "officers who stop a person who is reasonably suspected of carrying drugs are entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions, and to take reasonable measures to protect themselves") (internal quotation marks omitted); *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1086 (9th Cir. 2000) (suspicion of drug crimes; "it was not unreasonable to believe that" the suspect "might be armed"); *United States v. Edwards*, 53 F.3d 616, 618 (3d Cir. 1995) (suspicion of fraud at bank; frisk reasonable where "fraud occurred at a bank in broad daylight" and thus "the perpetrators might have armed themselves to facilitate their escape if confronted"); *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987) (suspicion of burglary; reasonable for officer responding to burglar alarm to stop and

Case 1:05-cr-00361-RBW    Document 31-2    Filed 02/13/2008    Page 15 of 15